# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **CANAL INSURANCE COMPANY,**<br><br>       **Plaintiff,**<br><br>v.<br><br>**MICHAEL BUTLER, SHERIDAN LOGISTICS, INC., and ALAN FARMER TRUCKING, INC.,**<br><br>       **Defendants.** | **CIVIL ACTION NO.:**<br>**7:18-CV-00212-LSC** |

## BRIEF IN SUPPORT OF MOTION
## FOR SUMMARY JUDGMENT

COMES NOW Canal Insurance Company, and pursuant to Rule 56 of the *Federal Rules of Civil Procedure*, and in support of its Motion for Summary Judgment, hereby submits the following brief in support:

### Summary of Relief Sought

This declaratory judgment action arises from a civil action pending in the Circuit Court of Tuscaloosa County, styled *Michael Butler v. Sheridan Logistics, Inc and Alan Farmer Trucking, Inc.*, bearing civil action number 63-CV-2017-901124. (Doc. 1-1). Canal Insurance Company ("Canal") filed the present action seeking a judicial determination as to the parties' rights and

[020026-00016/1323520/2]

obligations under a policy of insurance issued by Canal to Sheridan Logistics, Inc. ("Sheridan") and Alan Farmer Trucking, Inc. ("Alan Farmer"). Specifically, Canal seeks a determination that it has no duty to defend Sheridan and Alan Farmer in the underlying liability litigation.

Canal is providing conditional defense to defendants Sheridan and Alan Farmer under a reservation of rights. Canal seeks a declaration that it owes no continuing duty to defend and/or indemnify because (1) the defendants failed to provide timely notification of the accident pursuant to the conditions precedent to coverage; and (2) because certain exclusions contained in the policy exclude injuries to employees / independent contractors.

**Narrative Summary of Undisputed Material Facts**

1. On September 14, 2017, Michael Butler ("Butler") filed the underlying action against defendants Alan Farmer Trucking, Inc. ("Farmer") and Sheridan Logistics, Inc. ("Sheridan Logistics"). (Doc. 1-1)

2. In his Complaint, Butler alleges that on January 9, 2017, he was an independent contractor for Farmer and/or Sheridan Logistics for the transportation of military vehicles. *Id.* at ¶6.

3. As he was unloading a "tactical vehicle" from his trailer at his destination in Barstow, California, the vehicle began to slide before flipping

and landing on the driver side. *Id.* at ¶¶8-10. The haul was interstate, as it originated in Charleston, South Carolina.

4. Butler asserts claims for negligence and wantonness against Farmer and Sheridan Logistics, and more specifically alleges failure to provide proper equipment and/or proper permits such that the equipment was hazardous to use in loading and unloading the vehicle. *Id.*

5. Butler claims to have suffered medical expenses, pain and suffering, mental anguish, permanent injury, disfigurement, loss of earnings, property damage, diminution in value and loss of earning capacity. *Id.*

6. Upon information and belief, Butler jumped from the tactical vehicle as it was falling from the trailer, breaking both ankles and incurring more than $80,000 in medical bills.

7. Although the accident occurred on January 9, 2017, it was not reported or tendered to Canal until October 4, 2017, after Butler had filed suit. Canal is providing a conditional defense to the underlying action to Farmer and Sheridan Logistics under a complete reservation of rights.

8. In addition to the foregoing, Alan Farmer and Sheridan were requested to provide an excuse for the delay in notification of the accident to Canal of nearly ten months. In response, defendants stated "There was no delay in notification. In addition, the policy does not appear to require notice

of an 'incident.' The incident that is alleged to have caused Michael Butler's injury was not caused by anything either defendant did, and neither defendant suffered any loss in that incident. Therefore, neither defendant had any reason to think that an accident, claim, suit or loss had occurred. The defendants' first notice of an accident or loss occurred when Michael Butler decided to sue them, and the defendants gave prompt notice of that development to Canal Insurance Co." Exhibit 1 – Defendants' Responses to Interrogatories.

## Policy Provisions

9. Canal issued a policy of commercial automobile insurance to named insured Alan Farmer Trucking, Inc. and additional insured Sheridan Logistics, Inc., bearing policy number PIA08440901 with an effective period from April 1, 2016 to April 1, 2017. (Doc. 1-2)

10. The policy is subject to a $1,000,000 per occurrence limit.

11. The policy provides the following coverages:

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A.   Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply.

(Doc. 1-2, p. 33).

12. The coverages are subject to the following injury to employee exclusion:

**B.   Exclusions**

This insurance does not apply to any of the following:

. . .

**4.   Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or

**(2)** Performing the duties related to the conduct of the "insured's" business; or

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and . . .

. . .

**5.   Fellow Employee**

"Bodily injury" to:

**a.** Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

(Doc. 1-2, p. 35).

13. The policy is endorsed with the federally-mandated MCS-90 endorsement, which applies to interstate hauls, and which states in pertinent part:

**Endorsement for Motor carrier Policies of Insurance for Public Liability under Sections 29 and 30 of the Motor Carrier Act of 1980**

# FORM MCS-90

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.  Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment . . .

(Doc. 1-2, pp. 51-58).

      14.    The policy is subject to the following condition(s) precedent to coverage:

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

    **A.**    **Loss Conditions**

        **2.**    **Duties In The Event Of Accident, Claim, Suit Or Loss**

            We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

            **a.**    In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss".  Include:

                **(1)**    How, when and where the "accident" or "loss" occurred;

|     |     |     |
| --- | --- | --- |
|     | **(2)** | The "insured's" name and address; and |
|     | **(3)** | To the extent possible, the names and addresses of any injured persons and witnesses. |
| **b.** | Additionally, you and any other involved "insured" must: | |
|     | **(1)** | Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost. |
|     | **(2)** | Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit". |
|     | **(3)** | Cooperate with us in the investigation or settlement of the claim or defense against the "suit". |
|     | **(4)** | Authorize us to obtain medical records or other pertinent information. |
|     | **(5)** | Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require. |

(Doc. 1-2, p. 39).

## Summary Judgment Standard

Summary judgment is proper "if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ. P. 56(a). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant can meet

this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir.1996). *State Farm Mut. Auto. Ins. Co. v. Christian*, No. 11-CV-03781-LSC, 2013 WL 5350672, at *2 (N.D. Ala. Sept. 23, 2013).

"Once the movant has met its burden, Rule 56(e) 'requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e). "Where the non-movant presents direct evidence that, if believed by the jury, would be sufficient to win at trial, summary judgment is not appropriate even where the movant presents conflicting evidence. It is not the court's role to weigh conflicting evidence or to make credibility determinations....' *Mize,* 93 F.3d at 742. But when the non-movant's evidence cannot stand on its own, summary judgment is appropriate: 'A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.' *Info. Sys. & Networks Corp. v. City of Atlanta,* 281

F.3d 1220, 1224 (11th Cir.2002) (quoting *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437 (11th Cir.1991))." *Id.*

### Policy Interpretation and the Duty to Defend

"'When analyzing an insurance policy, a court gives words used in the policy their common, everyday meaning and interprets them as a reasonable person in the insured's position would have understood them. If, under this standard, they are reasonably certain in their meaning, they are not ambiguous as a matter of law and the rule of construction in favor of the insured does not apply. Only in cases of genuine ambiguity or inconsistency is it proper to resort to rules of construction. A policy is not made ambiguous by the fact that the parties interpret the policy differently or disagree as to the meaning of a written provision in a contract. A court must not rewrite a policy so as to include or exclude coverage that was not intended. However, if a provision in an insurance policy is found to be genuinely ambiguous, policies of insurance should be construed liberally in respect to persons insured and strictly with respect to the insurer." *State Farm Mut. Auto. Ins. Co. v. Brown*, 26 So. 3d 1167, 1169–70 (Ala. 2009); (internal quotations omitted); *quoting Western World Ins. Co. v. City of Tuscumbia,* 612 So.2d 1159 (Ala.1992); *St. Paul Fire & Marine Ins. Co. v. Edge Mem'l Hosp.,* 584 So.2d 1316 (Ala.1991); *Bituminous Cas. Corp. v. Harris,* 372 So.2d 342 (Ala.Civ.App.1979); *Watkins*

*v. United States Fid. & Guar. Co.,* 656 So.2d 337 (Ala.1994); *Canal Ins. Co. v. Old Republic Ins. Co.,* 718 So.2d 8 (Ala.1998); *Upton v. Mississippi Valley Title Ins. Co.,* 469 So.2d 548 (Ala.1985); *B.D.B. v. State Farm Mut. Auto. Ins. Co.,* 814 So.2d 877, 879–80 (Ala.Civ.App.2001); *Crossett v. St. Louis Fire & Marine Ins. Co.,* 289 Ala. 598, 603, 269 So.2d 869, 873 (1972).

"A contract of insurance, like other contacts, is governed by the general rules of contracts. Insurance companies are entitled to have their policy contract enforced as written. Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691–92 (Ala. 2001); *quoting Pate v. Rollison Logging Equip., Inc.*, 628 So.2d 337 (Ala.1993); *Gregory v. Western World Ins. Co.*, 481 So.2d 878 (Ala.1985); *Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker & Lowther, P.C.*, 703 So.2d 866, 870 (Ala.1996).

"If an insurance policy is clear and unambiguous in its terms, then there is no question of interpretation or construction. The fact that the parties interpret the insurance policy differently does not make the insurance policy ambiguous. While ambiguities or uncertainties in an insurance policy should

be resolved against the insurer, ambiguities are not to be inserted by strained or twisted reasoning. Where the parties disagree on whether the language in an insurance contract is ambiguous, a court should construe language according to the meaning that a person of ordinary intelligence would reasonably give it." *Twin City*, 817 So.2d at 692 (quoting *American & Foreign Ins. Co. v. Tee Jays Mfg. Co.*, 699 So.2d 1226 (Ala. 1997)); *Kelley v. Royal Globe Ins. Co.*, 349 So.2d 561 (Ala. 1977); *Western World Ins. Co. v. City of Tuscumbia*, 612 So.2d 1159 (Ala. 1992).

"It is well settled that an insurer's duty to defend is more extensive than its duty to indemnify. Whether an insurance company owes its insured a duty to provide a defense in the proceedings instituted against the insured is determined primarily by the allegations contained in the complaint. If the allegations of the injured party's complaint show an accident or an occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured." *Hartford Cas. Ins. Co. v. Merchants and Farmers Bank*, 928 So.2d 1006, 1009 (Ala. 2005) (internal citations omitted). "Where facts are alleged in the complaint to support a cause of action, it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action. . . . If there is any uncertainty as to whether the complaint alleges facts that would invoke

the duty to defend, the insurer must investigate the facts surrounding the incident to determine whether it has a duty to defend." *Id*. at 1012. ". . . [W]hen the complaint supplies descriptive facts and those facts are irreconcilable with a legal theory, such as 'negligence,' asserted in the complaint, the facts, not the mere assertion of the legal theory, determine an insurer's duty to defend." *Id.*

## Legal Authority and Argument – Late Notice

The policy requires "prompt" notice of an accident or loss as well as "immediate" notice of a suit or demand. Whether notice was compliant with the conditions of the policy is generally determined by whether notice was given "within a reasonable time in view of all of the facts and circumstances of the case." *Southern Guaranty Ins. Co. v. Thomas*, 334 So.2d 879, 882 (Ala. 1976). It is not necessary to prove prejudice to the insurer. The only considerations necessary to the analysis are length of delay and excuse for the delay. Generally, whether delay in notice was reasonable is a question of fact for the jury. However, there are certain circumstances where a court may find that delay in notice was unreasonable as a matter of law. "Conflicting inferences concerning the reasonableness of a delay may sometimes be drawn where the insured offers evidence of mitigating circumstances. However, where an insured fails to show a reasonable excuse or the existence of

circumstances which would justify a protracted delay, the Court should as a matter of law hold that there has been a breach of the condition as to notice." *Id*. at 882-882 (internal citations omitted).

A certain length of time alone may not always constitute unreasonable delay as a matter of law. However, the issue may be resolved as a matter of law based upon the insured's excuse for the delay. The Alabama Supreme Court has held that an insured's belief that the policy did not cover the accident is unreasonable as a matter of law. The Court also held in *Thomas, supra,* that an insured's belief that he was not liable for the accident was unreasonable as a matter of law. Finally, the *Thomas* Court held that the insured's belief that suit would not be filed is an unreasonable basis on which to delay notice. "It [is] not the insured's duty under the terms of the policy to determine the probability of suit being filed; it [is] his duty to give the insurer notice of any accident or occurrence and to forward to the insurer every demand within a reasonable time." *Id*. at 885.

Relevant to the present case are the ten month delay and the insured's excuse for delay. It is undisputed that the insured was aware of the accident the day it occurred and had been in contact with counsel for Butler through its own counsel. Alan Farmer and Sheridan's excuse for the delay is that neither believed they were liable for the accident and equate their own notice of an

"accident" to receipt of suit. They likewise stated upon tender that they did not believe suit would be filed. It is unreasonable for the defendants to believe that they would not be a target in a claim where a driver was injured unloading a vehicle from their equipment. It is likewise unreasonable as a matter of law that they failed to report the claim because they believed the matter to be closed or that suit would not be filed. "Generally, delay is excusable in the case of an accident which is trivial and results in no apparent harm or which furnishes no ground for the insured, acting as a reasonable and prudent man, to believe at the time that a claim for damages will arise or that the injury is one insured against. In such case notice is not required until some claim within the coverage of the policy has been presented or is reasonably to be anticipated, in which event the requirement as to notice is satisfied if notice is given within a reasonable time after the situation assumes an aspect suggestive of a possible claim for damages. Clearly, notice is necessary when there has been such an occurrence as would lead a reasonable and prudent man to believe that it might give rise to a claim for damages." *Fire Ins. Exchange v. McCoy*, 637 F.Supp2d 991, 991 (M.D. Ala. 2009); *quoting Progressive Specialty Ins. Co. v. Steele*, 985 So.2d 932 (Ala. Civ. App.) (Finding that insured's 14 month delay in notifying homeowner's insurer of a dog bite which resulted in injury to the plaintiff unreasonable as a matter of law).

Butler was injured while on duty for Alan Farmer and Sheridan Logistics.[1] The matter was immediately investigated by defendants and counsel for defendants. The tractor and trailer were inspected by an expert for Butler. Simply because the defendants were not advised of the conclusions or opinions of the expert as a basis for their belief they would not be sued is not a reasonable excuse for their ten month delay. Canal is entitled to judgment as a matter of law as a result of the insured's failure to comply with the notice requirement of the policy.

**Legal Authority and Argument – Injury to Employee Exclusion**

The policy excludes injuries to "employees" of the insured arising out of and in the course of their employment. It likewise excludes injuries to employees caused by a fellow employee. Because the accident occurred on an interstate haul, Alan Farmer and Sheridan are subject to the regulations of the Federal Motor Carrier Safety Act. *See, Progressive Mountain Insurance Company v. Madd Transportation, LLC*, 633 Fed.Appx. 744 (11th Cir. 2015). In *Madd Transportation*, the Eleventh Circuit addressed the issue of the exclusion's applicability to independent contractors when the carrier is subject to the Federal Motor Carrier Safety Act. Madd's driver was injured while

---

[1] The load was under the authority of Alan Farmer and Sheridan's placards were being displayed at the time of the accident. Exhibit 2 – Bill of Lading and Driver Logs.

securing a load of pipes on his truck. He sued the pipe manufacturer, IPSCO, since the accident occurred at its facility. IPSCO, in turn, joined Madd as a third-party defendant for negligent training and supervision. Madd's insurer, Progressive, sought a declaratory judgment that it owed no duty to defend Madd because its policy contained an exclusion precluding coverage for injuries to employees. As in the present case, "employee" was not specifically defined by the policy.[2] The Court found that "employee" includes an independent contractor, and affirmed summary judgment in favor of Progressive:

> Although the policy itself does not define "employee," it is subject to federal motor carrier regulations that do define that terms. *See* 49 C.F.R. §387.7(a) (2009) (stating that no motor carrier shall operate a vehicle until it has obtained the required level of insurance). In particular, the policy includes the federally-mandated MCS-90 Endorsement. *See* 49 C.F.R. §387.1-387.15 (2014). We must construe the policy's "terms and conditions" by that endorsement.
>
> * * *
>
> The endorsement provides that the policy's insurance "does not apply to injury or to death of the insured's *employee* while engaged in the course of their employment." Under the regulations that govern the endorsement, "employee" includes "an independent contractor while in the course of

---

[2] Pursuant to the policy "'Employee' includes a 'leased worker.' 'Employee' does not include a temporary worker'." (Doc. 1-2 p. 71).

>operating a commercial motor vehicle." 49 C.F.R. §390.5 (2015). . . .

*Id.* at 746 (emphasis in original); *See also, Lancer Ins. Co v. Newman Specialized Carriers, Inc.*, 903 F.Supp.2d 1272, 1278 (N.D. Ala. 2012) (applying the holding of *Madd Transportation* to an identical policy provision as Canal's, finding that a putative independent contractor was qualified as an employee under the motor carrier's policy, precluding coverage for injuries he sustained while unloading floating boat docks from a trailer).

In the present case, it is undisputed that Butler was an independent contractor for Alan Farmer and Sheridan hired to operate a commercial motor vehicle on behalf of Sheridan and Alan Farmer. The Canal policy was endorsed by the MCS-90 and defendants were governed by federal motor safety regulations. As a result, Butler is an "employee" for purposes of those regulations and the policy, and Canal owes no duty to defend Alan Farmer and Sheridan against the claims brought by Butler by operation of the exclusion.

WHEREFORE, PREMISES CONSIDERED, Canal Insurance Company respectfully moves this Honorable Court to enter judgment in its favor since there are no material facts in dispute precluding judgment as a matter of law in Canal's favor.

Respectfully submitted on this the 28th day of September, 2018.

/s/ John W Johnson II
John W Johnson II (ASB-1471-H69J)
Attorney for Plaintiff
Canal Insurance Company

**OF COUNSEL:**

**CHRISTIAN & SMALL LLP**
505 20th Street North
Suite 1800
Birmingham, AL 35203
Telephone:   (205) 795-6588
Facsimile:    (205) 328-7234
jwjohnson@csattorneys.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on **September 28th** of **2018** I have filed the above and foregoing pleading electronically with the Clerk of Court using the CM/ECF system which will send notification of same to all parties of record, and those not registered with the CM/ECF system have been served at their regular mailing address via U.S. Mail, postage prepaid.

| | |
|---|---|
| John E. McCulley | J. Will League |
| JOHN E. MCCULLEY, P.C. | Heath Brooks |
| PO Box 20576 | SINIARD, TIMBERLAKE & |
| Tuscaloosa, AL 35402 | LEAGUE, P.C. |
| johnemcculley@gmail.com | PO Box 2767 |
| ***Attorney for Defendants*** | Huntsville, AL 35804 |
| ***Sheridan Logistics, Inc. and*** | league@law-injury.com |
| ***Alan Farmer Trucking, Inc.*** | heath.brooks@law-injury.com |
| | ***Attorneys for Defendant*** |
| | ***Michael Butler*** |

                              /s/ John W Johnson II
                              OF COUNSEL